**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 18-3597 and 18-3653

UNITED STATES OF AMERICA

v.

MICHAEL WOOD,
Appellant in No. 18-3597

UNITED STATES OF AMERICA

v.

MARY WOOD,
Appellant in No. 18-3653

On Appeal from the United States District Court
for the District of New Jersey
(Nos. 1-16-cr-00271-001 & 1-16-cr-00271-002)
District Judge: Hon. Robert B. Kugler

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
November 20, 2019

Before: CHAGARES, MATEY, and FUENTES, *Circuit Judges*.

(Opinion filed: February 6, 2020)

MATEY, *Circuit Judge.*

A jury found Michael and Mary Wood guilty of alien harboring and conspiracy. While they raise a host of arguments seeking to overturn their convictions, we conclude all lack merit. So we will affirm.

## I. BACKGROUND

On June 9, 2016, a grand jury returned an indictment alleging that Michael and Mary Wood used an unlawful alien to provide domestic help, conduct amounting to alien harboring and a conspiracy to commit alien harboring, among other federal crimes.[1] As alleged in the indictment, the Woods illegally transported a Kenyan woman—known as "P.I."—to the United States and forced her to care for their children and home in isolating and controlled conditions. At trial, P.I. testified her ordeal began in July 2005 when the Woods met her in Africa, confiscated her Kenyan passport, and required her to use another individual's passport to fly to their home in New Jersey. Once there, the Woods forced her

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Count I charged the Woods with "conspir[ing] and agree[ing] with each other," in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), to: (1) "encourage and induce" P.I. to "come to, enter, and reside in the United States," in violation of 8 U.S.C. § 1324(a)(1)(A)(iv); (2) "transport and move P.I. within the United States," in violation of 8 U.S.C. § 1324(a)(1)(A)(ii); and (3) "conceal, harbor, and shield from detection P.I. in any place," in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). (App. at 35–38.) And Count II charged the Woods with "conceal[ing], harbor[ing], and shield[ing] from detection P.I." in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). (App. at 38.) The indictment also charged that all crimes were done "for the purpose of private financial gain" in violation of 8 U.S.C. § 1324(a)(1)(B)(i). (App. at 36, 38.)

to cook, clean, and care for their four children for nearly a year. P.I. eventually decided to leave and, with help from Mary's relatives, relocated to Mary's sister Anne's home in Pennsylvania.

At the close of the Government's case, the Woods moved for a judgment of acquittal, arguing that the charges were barred by a ten-year statute of limitations. Asserting that the criminal conduct ended when P.I. moved to Anne's home, they noted that testimony showed only that the move occurred sometime in June 2006,[2] insufficient for a jury to find that the charged conduct continued until at least June 9, 2006—that is, ten years before the indictment. In response, the Government pointed to testimony showing that Mary came to Anne's home "a few weeks" after P.I. moved, at which time P.I. finally told Mary she "wasn't coming [back] with her." (App. at 235, 401.) The Court found this evidence enough for the jury to convict and thus denied their motion. The jury later found the Woods guilty on both charges,[3] and this appeal followed.[4]

## II. DISCUSSION

The Woods raise several arguments in their attempt to overturn their convictions. Writing only for the parties, we address each in turn.[5]

---

[2] P.I. testified that she "moved [to] Anne's house [in] 2006, June[.]" (App. at 402.) Anne's then-husband testified that P.I. came "in June of 2006." (App. at 233.)

[3] Besides the harboring and conspiracy counts, the indictment also charged Mary with unlawful procurement of naturalization (Count III) and a false statement to a federal agent (Count IV). The District Court entered judgment of acquittal on Count III, and the jury acquitted Mary on Count IV. Neither are raised in this appeal.

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[5] We exercise plenary review over properly preserved claims of constructive amendment, variance, duplicity, and sufficiency of the evidence. *See United States v.*

3

## A.    Constructive Amendments

The Woods press two arguments on constructive amendment.[6] First, they challenge the conspiracy charge because the indictment did not allege that the Woods agreed to bring P.I. back from Anne's home. But nothing required the jury to find such an agreement, and the jury could have found that Mary's attempt to retrieve P.I. advanced one of the charged agreements, such as the agreement to "transport and move" P.I.[7] Relatedly, the Woods assert that their conspiracy would not have contemplated bringing P.I. back if she escaped their control, noting they terminated a previous housekeeper when she became disgruntled. Possibly, but the evidence does not compel that finding.

Second, they challenge the harboring charge, arguing that Mary's visit with P.I. could only be interpreted as an attempt to commit a new, uncharged harboring offense. For that same reason, the Woods also argue that the harboring charge was impermissibly duplicitous.[8] But the statute does not require continuous physical or constructive

---

*Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010); *United States v. Root*, 585 F.3d 145, 150 (3d Cir. 2009). For claims that are raised for the first time on appeal, however, we review for plain error only. *Vosburgh*, 602 F.3d at 531.

[6] "An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006).

[7] The availability of this finding disposes of the Woods' argument that no evidence showed the conspiracy continuing into the limitations period.

[8] "Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed." *United States v. Moyer*, 674 F.3d 192, 204 (3d Cir. 2012).

possession of an alien.[9] And the jury could have found that Mary's attempt to retrieve P.I. was part of one unbroken course of conduct designed to keep P.I. "conceal[ed], harbor[ed], and shield[ed] from detection."[10] (App. at 38.)

## B. Prejudicial Variance

The Woods argue that allowing the jury to consider Mary's visit with P.I. as offense conduct created a prejudicial variance.[11] But Mary's conversation with P.I. fits comfortably within the indictment's allegation that the Woods "prohibited [P.I.] from . . . leaving their residence without permission" and "engaged in conduct intended to make P.I. believe that she would be arrested and deported if she . . . left their residence without permission." (App. at 37–38.)

## C. Objects of the Conspiracy

The Woods state that some or all of the charged conspiracy's object offenses were legally invalid.[12] They note that all the crimes charged require facilitating an alien's illegal presence in the United States.[13] In contrast, they argue Mary's attempt to move P.I. from

---

[9] *Cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (noting that the crime of kidnapping ends when "the victim is free"); *see also United States v. Benjamin*, 711 F.3d 371, 378 (3d Cir. 2013).

[10] Likewise, this disposes of the Woods' argument that no evidence showed the harboring offense continuing into the limitations period.

[11] "A variance occurs where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment." *Vosburgh*, 602 F.3d at 532.

[12] "[I]f one of two or more alternative theories supporting a count of conviction is . . . legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial." *United States v. Syme*, 276 F.3d 131, 144 (3d Cir. 2002).

[13] *See, e.g.*, *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 248 (3d Cir. 2012) (noting that a conviction under 8 U.S.C. § 1324(a)(1)(A)(iv) requires proving "some

Pennsylvania back to New Jersey—an attempted *interstate*, not international, transfer—could not lead to a conviction under any of these statutes. But this argument rests on the assumption that, at the time of Mary's visit, P.I. planned to remain in the United States. The evidence, however, does not compel such a finding. Instead, a jury could have inferred that P.I. was contemplating a return to Africa, and that Mary's solicitation of P.I. was "conduct tending to substantially facilitate [P.I.'s] remaining in the United States illegally."[14] *United States v. Ozcelik*, 527 F.3d 88, 99 (3d Cir. 2008).

### D.    Facial Overbreadth

Finally, the Woods argue that one of the charged conspiracy's object offenses—8 U.S.C. § 1324(a)(1)(A)(iv), which prohibits "encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States"—is facially overbroad in violation of the First Amendment. The Woods did not raise this argument below, so we may reverse only if the statute is "clear[ly] or obvious[ly]" unconstitutional "under current law." *Gov't of V.I. v. Vanterpool*, 767 F.3d 157, 162 (3d Cir. 2014). Given the split of authority on this issue,[15] this standard is not satisfied.

---

affirmative assistance that makes an alien lacking lawful immigration status more likely to . . . remain in the United States than she otherwise might have been.").

[14] This analysis disposes of the Woods' argument that there was insufficient evidence showing that the Woods' intent to commit the charged conspiracy's object offenses continued into the limitations period, and their argument that the object offenses became legally impossible after P.I.'s move.

[15] *Compare United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018) (finding 8 U.S.C. § 1324 (a)(1)(A)(iv) unconstitutionally overbroad in violation of the First Amendment), *cert. granted*, 140 S. Ct. 36 (2019), *with United States v. Tracy*, 456 F. App'x 267, 272 (4th Cir. 2011) (per curiam) (rejecting an overbreadth challenge to § 1324(a)(1)(A)(iv)).

### III.  CONCLUSION

For these reasons, we will affirm the District Court's judgments of conviction.